## Northumberland Bridge.

*Bridges—Reconstruction after fire—Bridge connecting counties—Bridge connecting State highway routes—Expense of reconstruction—Cost paid by State—Statutes—Construction—Acts of June 14, 1923, and July 11, 1923.*

1. A county bridge connecting two counties, crossing a river so as to connect two State highway routes, and destroyed by fire prior to July 11, 1923, falls within the class of bridges described by the first paragraph of section 1 of the Act of July 11, 1923, P. L. 1070.

2. The provisions of the first paragraph of the act that such bridge shall be rebuilt at the expense of the Commonwealth is not nullified by the provision of the second paragraph of section 1 of the act, which provides that the bridge "shall be rebuilt by the State Highway Department, in accordance with provisions of existing laws providing for the rebuilding by the Commonwealth of country bridges destroyed by fire or wind-storm."

3. The provisions of the Act of June 14, 1923, P. L. 761, relating to the rebuilding of bridges destroyed by windstorms, are to be read into the Act of July 11, 1923, except in so far as they are inconsistent with the clear provision of paragraph 1 of section 1 of the Act of July 11, 1923, directing that the expense of rebuilding shall be at the expense of the Commonwealth.

4. No clear provision in one act is to be nullified by other provisions in the same act or in earlier acts, unless there is no reasonable method of reconciling any apparent conflicts.

5. The appropriation provided by section 2 of the Act of July 11, 1923, for the rebuilding of bridges authorized by section 1 of the act, makes the amount appropriated available from the general fund before any of the motor fund is used.

Department of Justice. Opinion to Hon. Paul D. Wright, Secretary of Highways.

WOODRUFF, Att'y-Gen., Aug. 18, 1924.—I have before me your request for an opinion as to whether you have the authority to reconstruct the bridge across the Susquehanna River, at Northumberland, which was destroyed by fire on June 3, 1923, by entering into a contract for the rebuilding of said bridge at a total cost of $405,000.

The laws which bear particularly upon your power to rebuild this bridge are the Acts of July 11, 1923, P. L. 1070, and June 14, 1923, P. L. 761.

The bridge which was burned June 3, 1923, falls clearly within the class of bridges identified by the first paragraph of section 1 of the Act of July 11, 1923, namely: *(a)* It was a county bridge; *(b)* across a river located on a State highway route; *(c)* connecting two State highway routes; *(d)* connecting two or more counties; and *(e)* having been destroyed by fire prior to July 11, 1923.

Northumberland Bridge.

Said first paragraph of section 1 of the Act of July 11, 1923, gives you the power to rebuild this bridge *"at the expense of the Commonwealth,"* provided only that the second paragraph of said section 1 does not modify that power.

Said second paragraph of the law provides that the bridge "shall be rebuilt by the State Highway Department in accordance with provisions of existing laws providing for the rebuilding by the Commonwealth of county bridges destroyed by fire or wind-storm." No existing law provides for the rebuilding of bridges destroyed by fire, but the Act of June 14, 1923, provides at length for the rebuilding of bridges destroyed by wind-storms; therefore, the provisions of said Act of June 14, 1923, are to be read into the Act of July 11, 1923, except in so far as such provisions are inconsistent with the clear provisions of paragraph 1 of section 1 of the Act of July 11, 1923.

All the consistent provisions of the Act of July 11, 1923, with regard to viewers, and action before and by the Court of Common Pleas of Dauphin County, have been carried out. The other provisions which bear upon the question at issue are:

1. Section 9 limits the expenses of the State in the case of bridges destroyed by wind-storm "to the sum required to construct a bridge of the dimensions and character of the old bridge destroyed."

2. The first paragraph of section 19 specifically authorizes that "payments of the amount due by the State may be made from the funds available for the construction of State highways," when the bridge "is on the route of a State highway."

It is a well-established principle in the construction of a law that no clear provision in one act shall be nullified by other provisions in the same act or in earlier acts, unless there is no reasonable method of reconciling any apparent conflicts. Paragraph 1 of the Act of July 11, 1923, clearly states that the rebuilding of bridges, like the one in question, shall be "at the expense of the Commonwealth." If, therefore, the provision of paragraph 2, which says that the bridge shall be rebuilt in accordance with provisions of existing laws, causes said section 9 to fall into direct conflict with the clear provision for building "at the expense of the Commonwealth" by restricting the amount which the State may pay and leaving the balance to be paid by the counties, the clear provision of the later act would be nullified in the present instance.

It should be noted that section 19 makes the amount due from the State for rebuilding bridges "on the route of State highways" destroyed by wind-storm less in some instances than the necessary cost of rebuilding such bridges, because section 9 of the same law determines "the amount due by the State" in the case of destruction by wind-storm.

When, however, at a later date, the Act of July 11, 1923, was passed, the legislature saw fit to change the rule as to "the amount due by the State" from the cost of a bridge of the same dimensions and character, so that if a bridge upon the State highway between two counties is destroyed by fire, it may be rebuilt by the State Highway Department wholly "at the expense of the Commonwealth," with no limitation based on the previous dimensions and character of the bridge.

Therefore, the rule for determining "the amount due by the State," contained in section 9 of the Act of June 14, 1923, has been replaced by the first paragraph of section 1 of the Act of July 11, 1923, so that, in applying section 19 of the former act, "the amount due by the State" is determinable, not by "the sum required to construct a bridge of the dimensions and character of the old bridge destroyed," but by the cost for building a new bridge accord-

Northumberland Bridge.

ing to the order of the Dauphin County Court for such rebuilding made in confirmance of the report of the viewers.

The five viewers were duly appointed. They proceeded according to the law to recommend "the kind of bridge needed and the probable cost thereof." The court ordered as follows: "And now, this 17th day of December, 1923, no exceptions having been filed to the above report of viewers, same is confirmed, and it is ordered and decreed that the said bridge shall be rebuilt as recommended in the report of the viewers."

Thus we have of record a court order for the rebuilding of this bridge, and the power of the Department of Highways becomes, by virtue of said order, a duty to proceed pursuant to the other provisions of the Act of June 14, 1923.

The department has prepared the plans and specifications, advertised for bids, and should now let the contract for rebuilding to the lowest and best bidder.

"Upon acceptance of any bid, the department, on behalf of the Commonwealth, shall enter into a contract for rebuilding of said bridge with such bidder, under the advice and direction of the Attorney-General."

One difficulty raised is that section 2 of the Act of July 11, 1923, appropriates $350,000 for the building of bridges authorized by section 1 of the same act. There is contention that the appropriation of $350,000 takes the place of the authority in section 19 of the Act of June 14, 1923, to utilize the motor fund for any part of the cost of building the Northumberland bridge. Section 19 is part of the "provisions of existing laws providing for the rebuilding of bridges" destroyed by wind-storm, and, therefore, is a provision applicable for rebuilding the Northumberland bridge. If no appropriation had been made in the Act of July 11, 1923, it is my opinion that section 19 of the Act of June 14, 1923, would have given the Department of Highways the power to use funds available for the construction of State highways (namely, the motor fund) for the entire cost of rebuilding this bridge. The appropriation of $350,000 from the general fund, in my opinion, does not operate to defeat the purpose of the act for the rebuilding of bridges of this description, but merely makes $350,000 from the general fund available before any of the motor fund is used.

*Conclusion.*

It is my opinion that you have the power and, probably because of the order of the court, the necessary duty to proceed to rebuild the bridge; and for that purpose you have the power to enter into a contract with what you consider the lowest and best bidder for the rebuilding of the bridge at a cost of (say) $405,000, to be paid, to the extent of $350,000, from the funds appropriated by section 2 of the Act of July 11, 1923, P. L. 1070, and the balance of $55,000 from the motor fund, under the authority of section 19 of the Act of June 14, 1923, P. L. 761.

You should not overlook the further restriction of the Act of June 14, 1923, § 18, that, although partial payments on the contract may be made from time to time as the work progresses, you are forbidden by section 17 of the Act of June 14, 1923, to approve for payment more than 80 per cent. of the estimated value of the work done.

This requirement should be followed closely, because the Dauphin County Court has the power and duty, under sections 15 and 16 of said act, to cause the bridge to be inspected, and (for reason) upon the report of the inspectors to cause a deduction to be made from the amounts stipulated in the contract to be paid to the contractor.

Northumberland Bridge.

It should also be observed (see sections 17 and 18) that the fees and expenses for viewers and inspectors, the proper charge for the preparation of the plans and specifications, as well as advertising and all other legal costs and expenses, are to be paid by the counties in which the bridge is located, pursuant to orders of the Dauphin County Court. From C. P. Addams, Harrisburg, Pa.